SPIER *v.* STATE.

Opinion delivered February 19, 1923.

1. HOMICIDE—SUFFICIENCY OF EVIDENCE.—In a prosecution for murder, evidence *held* to warrant submission of the charge of murder and to support conviction of voluntary manslaughter.

2. HOMICIDE—ORIGIN OF QUARREL.—In a prosecution for murder, evidence of the victim's wife that about two years before the killing defendant had ravished her, was admissible as being the cause of the quarrel between defendant and her husband, which never abated.

3. HOMICIDE—EVIDENCE OF DECEASED'S INSANITY.—Evidence as to an insanity proceeding against the deceased, either not objected to or else elicited by defendant, cannot be ground for complaint on appeal.

4. CRIMINAL LAW—ARGUMENT OF COUNSEL.—In a murder trial, where there was testimony that the killing of defendant's brother grew out of defendant having ravished his wife, statements of the prosecuting attorney that defendant shed more tears in the preceding 24 hours than he had shed for years prior to the trial, that evidence showed that he didn't shed tears at his brother's grave, that when defendant ravished his brother's wife he forfeited the right to live, and that the man who would ravish his brother's wife and then murder him would fabricate a defense like defendant had done, were mere expressions of opinion and proper argument.

5. CRIMINAL LAW—ARGUMENT OF COUNSEL.—In a murder trial, argument of the prosecuting attorney that defendant could have turned aside when he saw he was going to meet deceased, and, having failed to do so, he did not do everything in his power consistent with his safety to avoid difficulty, and therefore was not entitled to invoke the law of self-defense, was not prejudicial in view of the court's instruction that defendant had a right to pursue his intended course without turning aside, and

that a failure to turn aside would not deprive him of the right of self-defense.

6. CRIMINAL LAW—REQUESTED INSTRUCTIONS ALREADY COVERED.—Refusal of instructions fully covered by other instructions given was not error.

Appeal from Conway Circuit Court; *A. B. Priddy,* Judge; affirmed.

*Gordon & Combs,* for appellant.

*J. S. Utley,* Attorney General, *Elbert Godwin* and *W. T. Hammock,* Assistants, for appellee.

HUMPHREY:, J.　Appellant, Charlie Spier, was indicted in the Conway Court for murder in the first degree for killing his brother in Conway County on October 24, 1921, and on the trial of said charge was convicted of voluntary manslaughter and adjudged to serve two years in the State Penitentiary as punishment therefor. From the judgment of conviction an appeal has been duly prosecuted to this court.

Appellant's first assignment of error is that the evidence is not sufficient to support the judgment. It is contended that the undisputed evidence reflects that appellant killed his brother, Arthur Spier, in necessary self-defense. The record of the testimony is quite voluminous, and it would extend this opinion to great length to set out the testimony of each witness. Only a brief statment of the facts therefore will be attempted. The tragedy occurred on the public highway near Morrilton. It was the culmination of a quarrel between the brothers, of two years standing, growing out of a charge that Charlie had ravished Arthur's wife. Arthur had threatened appellant's life on many occasions, and had compelled him to leave home. Charlie had resided with his father and mother only a few hundred yards from Arthur's home. After leaving the country, Charlie returned secretly on several occasions to visit his parents. During one of these visits, the brothers engaged in a shooting affair near a neighborhood store. Neither was injured at that time. The sympathies of the father

and mother were with Charlie, which caused a bitterness between the two families. On one occasion, during the absence of Charlie, a charge of insanity was preferred against Arthur on account of frequent outbursts of anger toward his father and Charlie, in the hope that treatment in the Hospital for Nervous Diseases would restore his former equanimity. Charlie did not participate in the proceedings. On the night before the killing, Charlie spent the night with his brother, Elmer, who lived in the same neighborhood. Early the next morning he went to his father's home, in company with a friend, taking a single-barrel shotgun and two cartridges with him. In going to his father's house he saw Arthur, but avoided meeting him by going through the woods. In a short time after arriving at his father's home, he saw Arthur passing in a wagon on his way to Morrilton. Later in the morning Mr. Spier went to Morrilton in his buggy, and Charlie decided to go with him as far as Ed Bradshaw's, in order to collect some money which Bradshaw owed him. He procured two more cartridges at his father's home, making four in all, and took the gun with him. He testified that his purpose was to collect the money, return home by way of a neighborhood store, buy some more shells and hunt squirrels in the woods on the way back; that Bradshaw was not at home, so he decided to go on to town with his father; that after going about one-half mile he saw Arthur coming; that just before meeting him he observed a pistol in Arthur's hand; that he said, "Arthur, don't you get it," at which time Arthur began to fire, hitting him the first shot in the hip; that when Arthur fired the second shot he reached for his gun and shot him; that Arthur then fired four more shots at him.

R. I. Spier testified that Charlie was watching Arthur when they met him; that he heard Charlie say, "Don't you get it," and Arthur reached over for a pistol; that he became excited, and could not say which one fired first. Other witnesses who heard the shots said

they were close together, but the pistol shot was first. Dr. Arthur, the coroner, testified that appellant told him he took the gun that morning for the purpose of killing a hawk, should he see one.

Appellant's explanation as to why he had the gun, and why he went to town with his father, knowing they would likely meet Arthur, may have been regarded as a ruse by the jury. They may have disbelieved the testimony, and concluded that he took the gun for the purpose of engaging in a shooting fray with his brother. As they were about to meet, he was watching his brother, and quickly warned him not to draw his pistol. The jury may have drawn an inference from his conduct and statement that he was prepared to prevent Arthur from drawing the pistol, or, to put it in common parlance, that appellant had beaten him to it. While appellant stated that Arthur was the aggressor, his father, the only eye witness, stated that he did not know who fired first. The conflict in the evidence, and the reasonable inferences that might be drawn therefrom, warranted the submission of the charge of murder to the jury, and were sufficient to support the verdict and judgment.

Appellant's second assignment of error is that the court permitted the wife of deceased to testify that about two years before the tragedy appellant ravished her. This was the cause of the trouble between the brothers. The quarrel growing out of the affair never abated, but continued until it culminated in the tragedy. Being the origin of the trouble, the testimony was clearly admissible.

Appellant's third assignment of error is that the court admitted proof of the insanity proceeding against Arthur. No objection was made to the testimony of Mrs. Arthur Spier relating to the insanity proceeding, at the time it was introduced. The testimony of the other witnesses concerning the insanity proceeding was elicited by appellant from his own witnesses. We are

unable to see just how the introduction of the testimony prejudiced the rights of appellant, but, even if it did, he is in no position to complain.

Appellant's fourth assignment of error is that counsel for the State, over the objection and exception of appellant, made the following statements in the course of argument:

"1. The defendant could have turned aside to another road when he saw he was going to meet the deceased, and, having failed to do so, he didn't use all the means within his power consistent with his safety to avoid the difficulty. He was therefore not entitled to invoke the law of self-defense.

"2. The defendant shed more tears in the last twenty-four hours than he had shed for years prior to the trial; that he should have gone to the grave of his deceased brother at the time of his funeral and shed some tears; that the evidence showed that he didn't shed any at that time.

"3. When Charlie Spier ravished the wife of deceased, he forfeited the right to live, under the law.

"4. The man who would ravish his brother's wife and later murder him would fabricate a defense just like Charlie Spier had done."

The last three statements were expressions of opinions only, and therefore proper argument.

The first statement did not result in any prejudice to the cause of appellant, because the court instructed the jury "that he (appellant) had a right, under the law, to pursue his regular or intended course without turning aside to some other road, and that his failure to turn aside to some other road would not deprive him of his rights, under the law of self-defense."

Appellant's fifth assignment of error is that the court refused to give four of the instructions requested by him. We have examined the instructions carefully, and, by comparison with other instructions given by the

court, find that the instructions requested were fully covered by other instructions, except that part of appellant's request No. 1, embraced in the first sentence thereof. The court gave that part of appellant's request. The court fully and correctly instructed the jury upon every issue involved in the case.

No error appearing, the judgment is affirmed.